248 N.J. Super. 501 (1991)
591 A.2d 699
VIRGINIA BOFFARD AND DARYL K. BOFFARD, M.D., PLAINTIFFS,
v.
TIMOTHY BARNES, DOROTHY BLACK, CAROL FORD, BARBARA CARLSTROM, JANE DOE (A FICTITIOUS NAME) AND JOHN DOE (A FICTITIOUS NAME), DEFENDANTS.
Superior Court of New Jersey, Chancery Division Essex County.
Decided April 8, 1991.
*502 Pamela Mandel for plaintiff.
Richard J. Traynor and Michael Patrick Carroll for defendant (Michael Patrick Carroll on the brief).

OPINION
KIMMELMAN, J.S.C.

BACKGROUND
A preliminary restraint is sought to bar anti-abortion picketing in front of a physician's private residence. Plaintiff, Dr. *503 Daryl Boffard, is a physician who performs legal abortions at the North Jersey Gynecological Center P.A. (Center) in Irvington, New Jersey. For approximately the past two years the Center has been the site of picketing by anti-abortionists.
The verified complaint alleges that on September 8, 1990 approximately 20 picketers gathered in front of the Short Hills home of Dr. Boffard, where he resides with his wife and three small children. It appears that plaintiffs' home is located on a quiet, narrow street which has only two residences, and room for only one car to drive through at a time. It was alleged that the picketers carried signs which referred to Dr. Boffard as a "baby killer", and that they also carried placards bearing graphic depictions of a mutilated, decapitated infant, which was portrayed to be abortion remains. Plaintiffs herein seek an injunction based upon common law tort: deprivation of the use and enjoyment of property, and mental and emotional pain and anguish.
By way of temporary restraint, the Court prohibited defendants from continuing picketing of the type described within 200 feet of plaintiffs' property. Upon the return date of the Order to Show Cause, plaintiffs, Dr. and Mrs. Boffard, contend that defendants' conduct amounts to nothing more than a depraved use of defendants' right of free speech which should not be permitted to lie against plaintiffs' countervailing right to privacy. Defendants, on the other hand, maintain that the right of free speech is guaranteed regardless of how intimidating, embarrassing, or shameful to recipients it may appear to be. Short of trespass or injury, defendants assert that the plaintiffs present no justifiable claim which would warrant a preliminary injunction. Defendants point out that while the picketers have been peaceful, it is the plaintiff, Mrs. Boffard, who has been confrontational. Plaintiffs have caused police incident reports to be filed but no property damages have been claimed.

*504 DISCUSSION
There is squarely presented to this Court for resolution a clash between two principles fundamental to our society: one's right to privacy and the extent of one's right to express opinions and beliefs free from governmental interference. To apply the facts of this case to those principles, basic constitutional considerations must first be addressed.
The United States Supreme Court has established criteria for evaluating the appropriateness of and the atmosphere in which restraints on speech may be upheld. In Frisby v. Schultz, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988), quoting from Perry Ed. Assn. v. Perry Local Ed. Assn., 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) the Court said:
To ascertain what limits, if any, may be placed on protected speech, we have often focused on the "place" of that speech.... Our cases have recognized that the standards by which limitations on speech must be evaluated `differ depending on the character of the property at issue.' Frisby 487 U.S. at 479, 108 S.Ct. at 2499.
Defendants here seek to exercise their First Amendment rights in a traditional forum: the public street. Defendants rely on the following language in Frisby for the proposition that streets do not change status simply because they enter a residential area:
[W]e have repeatedly referred to public streets as the archetype of a traditional public forum.
.... Our prior holdings make clear that a public street does not lose its status as a traditional public forum simply because it runs through a residential neighborhood.... No particularized inquiry into the precise nature of a specific street is necessary; all public streets are held in the public trust and are properly considered traditional public fora. Frisby at 480-481, 108 S.Ct. at 2499-2500.
The right of expression in the public forum may not be abridged by discriminating means, Police Department v. Mosely, 408 U.S. 92, 100, 92 S.Ct. 2286, 2292, 33 L.Ed.2d 212 (1972); Carey v. Brown, 447 U.S. 455, 460, 100 S.Ct. 2286, 2289, 65 L.Ed.2d 263 (1980), by silencing based on the speeches' content, Perry Ed. Assoc. v. Perry Local Ed. Assoc., supra, 460 U.S. at 45, 103 S.Ct. at 955; Carey v. Brown, supra, 447 U.S. at *505 470, 100 S.Ct. at 2295, or by a means eliminating all forums of expression. Perry 460 U.S. at 45, 103 S.Ct. at 955.
Thus, any attempt to restrict speech in the public forum should command the strictest of scrutiny. Accordingly, regulations as to time, place and manner of expression which are narrowly tailored to serve a significant government interest, are content-neutral and leave open alternate forums for expression are held to be permissible restraints on freedom of speech. Perry at 45, 103 S.Ct. at 955.
It is clear then that not all speech may be permissible at all places and at all times. Frisby 487 U.S. at 479, 108 S.Ct. at 2499. When the expressor's activities impinge upon and interfere with the legitimate right of others, the Courts have not hesitated to impose reasonable time, place and manner restrictions on the expressor's conduct. See Northeast Women's Center, Inc. v. Mohangle, 745 F. Supp. 1082, 1098 (E.D.Pa. 1990) quoting from Roe v. Operation Rescue, 710 F. Supp. 577, 588 (E.D.Pa. 1989).
The judicial function here is to determine the balance to be struck between the defendants' right of free speech and the plaintiffs' right to privacy. While freedom of speech is to be jealously guarded, when it becomes intertwined with conduct, total freedom may stop and the right to regulate may begin depending upon the disruptive potential inherent in the conduct. City of Wauwatosa v. King, 49 Wis.2d 398, 182 N.W.2d 530, 533 (1971).
There is no doubt that the defendant picketers have a right to be present and to express their anti-abortion views at the Center in Irvington. Their message at that location is focused directly toward the patrons of the Center during ingress and egress and toward members of the public at large. Plaintiffs do not seek to preclude or limit defendants' right to continue their demonstrations at the business premises. The *506 Court's sole concern then is with defendants' conduct in the vicinity of plaintiffs' residence.
No one would seriously dispute that refuge to one's home for peace and tranquility is a valuable expectation in a civilized society. See Carey, 447 U.S. at 471, 100 S.Ct. at 2295. An important aspect of residential living is the privacy and insulation one is afforded from the buffeting and jostling characteristic of the public thoroughfare. In the public forum, individuals subjected to picketing may choose to avert their eyes whereas in their private residential setting they have no expectation of becoming an unwilling or captive audience.
It would tax one's credulity to believe that defendants' anti-abortion picketing and messages in the immediate vicinity of plaintiffs' residence are directed toward likely recipients of Dr. Boffard's services or toward members of the public at large. Consequently, the defendants' picketing in the manner described at this private location can only be intended to intimidate, harass, denigrate and embarrass Dr. Boffard before his family and neighbors in the one area where he should enjoy some reasonable expectation of privacy.

CONCLUSION
In the limited context of this case, it is the Court's view that an individual is entitled to the law's protection against what may be considered an offensive demonstration being purposely heaped upon him and his family at his private residence and in full view of his neighbors under the guise of the exercise of free speech when there are available countless alternate public forums where such expression may be freely made. Defendants' activities, if allowed to continue in the immediate vicinity of Dr. Boffard's home, would constitute an abuse and perversion of defendants' First Amendment right of free speech. Weighed against Dr. Boffard's right to privacy, there exists no mandate for constitutional protection of such conduct in this case.
*507 For these reasons a preliminary injunction will issue specifically fashioned to serve the government's interest in preserving plaintiffs' right to privacy in a limited geographic area. Defendants' right to freedom of expression is not halted and the picketing may continue at the Center in Irvington.
The Court's perception is that there may not remain a substantial dispute between the parties as to factual issues which would warrant a final hearing. If such is the case, the Court will entertain an application to enter a final decree.